**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| YEP COMMERCE, INC.,[1] | : | Case No. 23-11820-LSS |
| | : | |
| Debtor. | : | |
| | : | Hearing Date: October 8, 2024, at 11:00 a.m. |
| | | Objections Due: September 30, 2024 at 4:00 p.m. |

**CHAPTER 7 TRUSTEE'S MOTION FOR AN ORDER AUTHORIZING THE PUBLIC AUCTION AND SALE OF THE DEBTOR'S RIGHT, TITLE, AND INTEREST IN CERTAIN VEHICLES, FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, PURSUANT TO 11 U.S.C. §§ 105 AND 363, AND RULE 6004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

Alfred T. Giuliano (the "Trustee"), the Chapter 7 trustee for the estate of Yep Commerce, Inc. (the "Debtor"), by and through his attorneys, Fox Rothschild, LLP, respectfully requests the entry of an Order authorizing (i) the Trustee to sell the Debtor's right, title, and interest in the Vehicles (as defined below) by online public auction (the "Auction") conducted by Taylor & Martin, LLC Auctioneers (the "Auctioneer" or "T&M"); and (ii) the sale (the "Sale", and together with the Auction, the "Auction and Sale") of the Vehicles to the highest prevailing bidder at the Auction, free and clear of liens, claims, interests, and encumbrances, pursuant to 11 U.S.C. §§ 105 and 363, and Fed. R. Bankr. P. 6004, with any such liens, claims, interests, and encumbrances attaching to the proceeds from the Auction and Sale to the same extent, validity, and priority, as existed prior to the Auction and Sale (the "Motion"). The Auction and Sale of the Vehicles will be subject to the terms and conditions of that certain Auction Agreement (the "Auction Agreement"), dated September 4, 2024, by and between the Trustee and the Auctioneer, a copy of

---

[1] The last four digits of the Debtor's Employer Identification Number are 1962.

161600956.1

which is attached hereto as **Exhibit "A"** and incorporated herein by reference. In support of this Motion, the Trustee states as follows:

## JURISDICTION

1. The Court has jurisdiction over this Motion, pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2)(A).

2. Venue of this proceeding and this Motion is proper in this district, pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought herein are Sections 105 and 363 of Title 11 of the United States Code (the "Bankruptcy Code"), and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

**A. Bankruptcy Procedural History and Background on Debtor's Business**

4. On November 6, 2023 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court"), as a Subchapter V debtor.

5. On November 9, 2023, the Debtor filed the *Declaration of Airende Ojeomogha in Support of First Day Relief* (the "First Day Declaration"), providing background on the Debtor's pre-petition business and the facts and circumstances that precipitated the Debtor's voluntary petition for relief [D.I. 12].

6. On July 18, 2024, the Court entered an Order converting the Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code [D.I. 183].

7. On July 23, 2024, the Office of the United States Trustee appointed Alfred T. Giuliano as Chapter 7 trustee, which appointment remains in effect today [D.I. 185].

8. On September 6, 2024, the Trustee filed the *Motion of Chapter 7 Trustee for an Order Authorizing the Employment and Retention of Taylor & Martin, LLC Auctioneers as Auctioneer, Pursuant to 11 U.S.C. §§ 327(a) and 328(a), Fed. R. Bankr. P. 2014, and Del. Bankr. L.R. 2014-1, and a Request for Waiver of Fee Application Requirements, Pursuant to Del. Bankr. L.R. 2016-2* (the "Auctioneer Retention Application"), seeking to employ Taylor & Martin, LLC ("T&M") as auctioneer to the Trustee [D.I. 201].

9. As more fully set forth in the First Day Declaration, the Debtor was formed in September 2022 for the sole purpose of purchasing all the assets of a logistics company, Genesis Express Transport ("Genesis").

10. As a result of the acquisition of Genesis, upon information and belief, the Debtor's estate now consists of approximately seventy (70) trucks and trailers, fifty-nine (59) of which are currently being stored at a lot in Sacramento, California (the "Vehicles").

### B. Proposed Auction and Sale of the Vehicles

11. As noted above, the Trustee filed the Auctioneer Retention Application on September 6, 2024. The Auctioneer has already begun the process of inspecting, evaluating, and preparing for the eventual relocation of the Vehicles to the location where the vehicles will be stored up to the date of and during the Auction, with the address of 6001 Las Vegas Blvd. North, Las Vegas, NV 89115 (the "Equipment Location").

12. The Auctioneer has proposed to conduct an online Auction of the Vehicles at the Equipment Location on October 31, 2024. Based on the Auctioneer's expertise and experience, it believes that conducting the Auction and Sale of the Vehicles on October 31, 2024 will provide sufficient time for the Auctioneer to market the Vehicles and generate the highest amount of

proceeds for the Debtor's bankruptcy estate, while simultaneously reducing administrative costs and the risk that the Vehicles sustain damage prior to being sold.

13. As such, the Trustee submits that the Auction and Sale of the Vehicles by October 31, 2024 will result in the highest value for the Vehicles at a reduced cost, and thus, the Auction and Sale is in the best interest of the Debtor's estate and its creditors.

### C. Salient Terms of Auction Agreement

14. Pursuant to the Auction Agreement, the Auctioneer will conduct an online public Auction of the Vehicles.

15. Prior to the Auction, the Auctioneer will conduct a promotional and marketing campaign for the sale of the Vehicles by Auction, which may consist of advertisements in (i) national, state, and/or local trade journals; (ii) digital media platforms; (iii) in-house mailings to over 20,000 potential buyers from T&M customer lists or acquired lists; and/or (iv) other general advertisements which T&M determines are necessary and commercially reasonable. Further, in accordance with the terms of the Auction Agreement, the Auctioneer is authorized to prepare the Vehicles for Auction by washing, detailing, polishing, painting, cleaning, or repairing the Vehicles, to the extent necessary.

16. The Auctioneer will advance any out-of-pocket costs incurred by T&M in connection with the sale of the Vehicles, including Preparation Costs, Necessary Repairs, Transportation Costs, Emergency Repairs, Third Party Storage Costs, Court Intervention Costs, and vehicle inspection fees (collectively, the "Sale Expenses").[2] The Trustee will reimburse T&M for the Sale Expenses advanced by T&M from the proceeds of the Auction and Sale.

---

[2] Capitalized terms not defined herein shall have the meanings ascribed to such terms as in the Auction Agreement.

17. Pursuant to the terms of the Auction Agreement, the Auctioneer will be paid on a commission basis. T&M will receive a commission equal to seven percent (7%) of the auction proceeds for the sale of any item of "rolling stock," (i.e., the Vehicles) and a commission equal to twenty-five (25%) of the auction proceeds for the sale of any item of "non-rolling stock," to the extent any such items are sold. The Auctioneer will also charge and retain a five percent (5%) buyer's premium from each buyer in connection with the sale of each Vehicle (the "<u>Buyer's Premium</u>", together with the other commissions discussed in this paragraph, the "<u>Commissions</u>").

**RELIEF REQUESTED**

18. By and through this Motion, the Trustee seeks the entry of an Order authorizing (i) the Trustee to sell the Debtor's right, title, and interest in the Vehicles by way of Auction; and (ii) the Sale of the Vehicles to the highest prevailing bidder at the Auction, subject to the terms of the Auction Agreement, free and clear of liens, claims, interests, and encumbrances, pursuant to 11 U.S.C. §§ 105 and 363, and Fed. R. Bankr. P. 6004, with any such liens, claims, interest, and encumbrances attaching to the proceeds from the Auction and Sale to the same extent, validity, and priority, as existed prior to the Auction and Sale.

**BASIS FOR RELIEF**

**A.  The Sale of the Debtor's Right, Title, and Interest in the Vehicles by Auction to the Highest Bidder, Free and Clear of Liens, Claims, and Encumbrances Is Appropriate Under 11 U.S.C. § 363.**

19. Section 363(b) of the Bankruptcy Code provides that a Trustee "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." See 11 U.S.C. § 363(b)(1).

20. To approve a use, sale, or lease, other than in the ordinary course of business, the Court must find "some articulated business justification." *See In re Martin (Myers v. Martin)*, 91

5

161600956.1

F.3d 389, 395 (3d Cir. 1996); *In re Abbotts Dairies of Pennsylvania. Inc.*, 788 F. 2d 143 (3d Cir. 1986) (requiring a good faith purchase); *In re Delaware and Hudson Ry. Co.*, 124 B.R. 169 (D. Del. 1991) (concluding that the requirements for a sale outside the ordinary course of business include a sound business purpose, adequate and reasonable notice, a fair and reasonable price, and a good faith purchaser). Although 11 U.S.C. § 363(b) does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate, courts in this District have required that such use, sale, or lease be based upon a trustee's sound business judgment. *See, e.g.*, *In re Decora Indus., Inc.,* 2002 WL 32332749, *2 (D. Del. May 20, 2002); *In re Delaware & Hudson Ry. Co.,* 124 B.R. at 176; *In re Montgomery Ward Holding Corp.,* 242 B.R. 147, 153 (Bankr. D. Del. 1999). A trustee's showing of sound business justification need not be unduly exhaustive; instead, the trustee is "simply required to justify the proposed disposition with sound business reasons." *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984).

21. Bankruptcy courts are also given substantial discretion in deciding whether to authorize a sale of the debtor's assets outside of the ordinary course of business. *See In re Chateaugay Corp.*, 973 F.2d 141, 144 (2d Cir. 1992).

22. For all of the reasons set forth in the Motion, the Trustee, through the exercise of his business judgment, believes that the proposed Auction and Sale of the Vehicles, pursuant to 11 U.S.C. § 363(b), will result in the highest and best offers that the Trustee will obtain for the Vehicles. The market check to be provided through the Auction will demonstrate the fairness and reasonableness of the consideration being received from the Sale of the Vehicles to the highest prevailing bidder.

23. T&M is particularly experienced in all aspects of buying, selling, and valuing assets like the Vehicles. For more than fifty-nine (59) years, T&M has been dedicated exclusively to the transportation industry – becoming the nation's leader in over-the-road trucking equipment re-marketing, appraisals, and consulting. As set forth above, in the Auctioneer's view, conducting the Auction and Sale of the Vehicles on October 31, 2024, will generate the highest amount of proceeds for the Debtor's estate because it will permit sufficient time for the Auctioneer to market the Vehicles, while keeping administrative costs low and reducing the risk that the Vehicles sustain any damage before they are sold. The Trustee asserts that selling the Vehicles by Auction, pursuant to 11 U.S.C. § 363(b), is the best way to ensure an orderly and equitable sale process and a, potentially, meaningful distribution of proceeds to creditors. In light of the aforementioned, the Trustee believes that the sale of the Vehicles by auction to the highest prevailing bidder is the best way to maximize the value that will be generated from the Sale of the Vehicles, thereby allowing the greatest possible recovery for the Debtor's estate and its creditors.

24. Additionally, the Trustee respectfully submits that it is appropriate that the Sale of the Vehicles to the highest prevailing bidder at the Auction be free and clear of liens, claims, interests, and encumbrances, pursuant to 11 U.S.C. §§ 105 and 363, and Fed. R. Bankr. P. 6004, with any such liens, claims, interest, and encumbrances attaching to the proceeds from the Auction and Sale to the same extent, validity, and priority, as existed prior to the Auction and Sale.

25. Pursuant to Section 363(f) of the Bankruptcy Code, the Court may authorize the sale of assets free and clear of existing liens, claims, interests and encumbrances if: (a) applicable non-bankruptcy law permits the sale of such property free and clear of such interest; (b) the entity holding the lien, claim, or encumbrance consents to the proposed sale; (c) such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such

property; (d) such interest is in bona fide dispute; or (e) such entity could be compelled in a legal or equitable proceeding to accept a money satisfaction of such interest. 11 U.S.C. § 363(f). As 11 U.S.C. § 363(f) is stated in the disjunctive, when proceeding pursuant to 11 U.S.C. § 363(b), it is only necessary to meet one of the five conditions of 11 U.S.C. § 363(f).

26. The Trustee proposes to sell the Vehicles by Auction to the highest prevailing bidder, which the Trustee submits would represent the fair market value of the Debtor's right, title, and interest in the Vehicles. The Trustee has been in discussions with the entity that allegedly holds a lien on the Vehicles to determine the extent, validity, and priority of such lien without judicial intervention. Those discussions are ongoing. In any event, to the extent any lessor or secured lender has an interest in any of the Vehicles, the Trustee proposes that the absence of any objections to the entry of the Order approving this Motion, following the provision of notice, be deemed "consent" to the Sale of the Debtor's right, title, and interest in the Vehicles, pursuant to 11 U.S.C. § 363(f)(2). As such, the Trustee avers that the requirements of 11 U.S.C. § 363(f) are satisfied.

27. Accordingly, in the exercise of the Trustee's business judgment, the Trustee submits that the Auction and Sale of the Vehicles to the highest prevailing bidder, subject to the terms of the Auction Agreement, free and clear of liens, claims, interests, and encumbrances, pursuant to 11 U.S.C. §§ 105 and 363, and Fed. R. Bankr. P. 6004, should be approved.

    **B.**    **Waiver of Fourteen-Day Stay Period**

28. The Trustee requests that the Court waive the requirements under Fed. R. Bankr. P. 6004(h), so that any Sale of the Vehicles may close immediately rather than being subject to the fourteen (14)-day waiting period outlined in Fed. R. Bankr. P. 6004(h).

29. Fed. R. Bank. P. 6004(h) provides that an order authorizing the "use, sale, or lease of property … is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).

30. The purpose of Fed. R. Bankr. P. 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented. *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h). Although Fed. R. Bankr. P. 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day stay period, COLLIER suggests that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 COLLIER ON BANKRUPTCY, ¶ [6004.11], 6004-18 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). COLLIER further provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to seek a stay, unless the court determines that the need to proceed sooner outweighs the interests of the objecting party. *Id.*

31. As set forth above, conducting the Auction and Sale of the Vehicles on October 31, 2024 will generate the highest amount of proceeds for the Debtor's estate because it will allow sufficient time to market the Vehicles and prepare them for the Auction, while reducing administrative costs and the risk of damage to the Vehicles. Therefore, the Trustee hereby requests that the Court waive the 14-day stay period under Fed. R. Bankr. P. 6004(h).

## **NOTICE**

32. Notice of this Motion will be provided to: (a) the Office of the United States Trustee for the District of Delaware, (b) counsel for the Debtor, (c) creditors that hold claims for which

proofs of claim have been filed; (d) all creditors identified on the creditors' matrix; and (e) those persons who have requested notice, pursuant to Bankruptcy Rule 2002.

## CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Court grant the Motion and enter an Order, substantially in the form attached hereto:

(a) authorizing the Trustee to sell the Debtors' right, title, and interest in the Vehicles by way of Auction on October 31, 2024;

(b) authorizing the Sale of the Vehicles to the highest prevailing bidder at Auction on an "as is" "where is" basis, free and clear of liens, claims, interests, and encumbrances, pursuant to 11 U.S.C. §§ 105 and 363, and Fed. R. Bankr. P. 6004;

(c) waiving the fourteen (14)-day stay provided for in Bankruptcy Rule 6004(h); and

(d) granting the Trustee such other and further relief as is just and proper.

Respectfully submitted,

**FOX ROTHSCHILD LLP**
By: */s/ Seth A. Niederman*
Seth A. Niederman
Delaware Bar No. 4588
1201 N. Market Street, Suite 1200
Wilmington, DE 19801
Phone (302) 654-7444/Fax (302) 656-8920
sniederman@foxrothschild.com

-and-

Michael G. Menkowitz
Jesse M. Harris
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3222
Phone (215) 299-2000/Fax (215) 299-2150
mmenkowitz@foxrothschild.com
jesseharris@foxrothschild.com

Dated: September 16, 2024

*Counsel for Alfred T. Giuliano, Chapter 7 Trustee for the estate of Yep Commerce, Inc.*

161600956.1