# Exhibit "A"



## AUCTION AGREEMENT

THIS AUCTION AGREEMENT ("Agreement") is made and entered into effective as of September 4, 2024, subject to Bankruptcy Court approval as provided herein, by and between Alfred T. Giuliano, solely in his capacity as Chapter 7 trustee (the "Trustee") for the estate of YEP COMMERCE, INC, dba GENEX ("GENEX" or the "Debtor") and **TAYLOR & MARTIN, LLC AUCTIONEERS**, a Delaware limited liability company ("T&M").

### RECITALS

A. On November 6, 2023 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

B. On July 18, 2024, the Court entered an Order converting the Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code.

C. On July 23, 2024, the Office of the United States Trustee appointed Alfred T. Giuliano as Chapter 7 trustee, which appointment remains in effect.

D. Prior to the Petition Date, the Debtor was in the business of, among other things, the operation, ownership, and/or sale of used trucks, tractors, trailers, and other motor vehicle equipment, including shop, dock, and office equipment, ("Equipment"); and,

E. T&M is in the business of the auction of Equipment and has agreed to provide auctioneering services to the Trustee on a periodic basis in accordance with the terms set forth herein;

### AGREEMENT

NOW, THEREFORE, for good and valuable consideration, together with the mutual terms and covenants set forth herein, the receipt of which is hereby acknowledged, it is agreed as follows:

1. *Recitals:* The foregoing recitals are incorporated into this Agreement by reference as if specifically set forth herein.

2. *Effective Date.* The effective date (the "Effective Date") under this Agreement shall be the first business day after entry of an Order approving this Agreement. If such an order is not entered, the Agreement shall be null and void and made without prejudice to either party.

3. *Auction Date and Equipment Location: Subject to Court approval, the Trustee* does hereby grant T&M with the exclusive right to sell by auction all items of Equipment including, but not limited to, the Equipment identified on Schedule "A" attached hereto at 6001 Las Vegas Blvd N Las Vegas, NV 89115 ("Equipment Location") on October 31, 2024 ("Auction Date"), subject to final approval by the Bankruptcy Court; provided, however, that additional Equipment may be added to Schedule "A" or removed from Schedule "A" by the Trustee at any time, subject to Paragraph 10 herein. A relatively minor amount of Equipment may also be stored and sold at other T&M sale locations including, but not limited to, Nebraska, North Carolina and Atlanta on a date or dates to be mutually agreed by the Trustee and T&M. All Equipment must be delivered to the Equipment Location no later than 5 days prior to the Auction Date in order to be listed for online bidding.

4. *Auctioneer Responsibilities:*

A. *Equipment Preparation, Necessary Repairs.* T&M is authorized to incur costs on behalf of the Debtor's estate for the purpose of preparing the Equipment for sale, which may include, washing; detailing; polishing; painting of wheels and frames; and interior cleaning, the aggregate cost of which shall not exceed $300.00 for each item of Equipment, in the absence of further authorization by the Trustee ("Preparation Costs"). T&M is further authorized to perform repairs to enhance the marketability of the Equipment, which may consist of, but not necessarily be limited to, minor body work; minor mechanical repairs; replacement of bumpers; batteries; and/or broken or cracked glass ("Necessary Repairs"). The aggregate cost of Necessary Repairs shall not exceed $500.00 per unit of Equipment in the absence of further authorization by the Trustee.

B. *Marketing.* T&M shall provide promotional support for the sale of the Equipment prior to the auction in a manner consistent with T&M's past business experience and practices, which may consist of advertisements in national, state and/or local trade journals, digital media, in-house mailings to potential buyers from T&M customer lists or acquired lists, and/or other general advertisements which T&M determines are necessary to promote the auction in a commercially reasonable manner, provided that the Debtor shall incur no additional costs under this paragraph.

C. *Management of Sale.* T&M shall conduct the sale from T&M's On-Line Broadcasting facility listed on Schedule A in a commercially reasonable manner, which shall be staffed by informed sales personnel, ringmen, and transaction closing personnel in order to properly display, sell, close, and account for all transactions relating to the Equipment. All Equipment shall be on display prior to the sale to allow visual inspection by potential

buyers. T&M shall be responsible to prepare financial settlements in connection with each sale and to remit the proceeds to the Trustee in accordance with terms of this Agreement.

T&M agrees to provide on-line registration and bidding services in connection with the Auction Date. However, T&M shall not be liable or responsible for any interruptions, termination or corruption of any audio feed, video feed or of any other internet registration, bidding or other online related service that occurs before, during or in connection with the Auction Date, regardless of the cause of fault attributable to the interruption, termination, or corruption of such services.

## 5. *Consignor Responsibilities.*

A. *Compensation.* T&M shall be compensated for each sale of Equipment hereunder based upon a commission equal to seven (7%) of the auction proceeds received from the sale of each item of rolling stock Equipment, including truck and trailers, and twenty-five percent (25%) on all non-rolling stock, shop, dock (including forklifts and pallet jacks) and office Equipment ("Commission"). T&M will also charge and retain a five percent (5%) buyer's premium from each buyer in connection with the sale of each item of Equipment. In addition, the Trustee shall reimburse T&M for any out-of-pocket costs incurred by T&M in connection with the sale of each item of Equipment including Preparation Costs, Necessary Repairs, Transportation Costs, Emergency Repairs, Third Party Storage Costs, all as defined herein, vehicle inspection fees and any other out-of-pocket costs incurred by T&M which are the responsibility of the Debtor's estate under this Agreement. All reimbursable costs payable to T&M shall be deducted from the gross sales proceeds pursuant to Paragraph 6 below.

B. *Titles/Releases of Liens.* The Trustee shall cause a copy of each available Certificate of Title to each item of Equipment listed on Schedule A to be delivered to T&M within 7 days following the execution of this Agreement. The Trustee shall deliver the original Certificates of Title to the Equipment on a date mutually agreed by the parties but in no event later than ten (10) days prior to the Auction Date The Bankruptcy Court Order which authorizes the sale of the Equipment must include an order that all of the Equipment will be free and clear of all liens, encumbrances and claims of third parties as of the Auction Date in order to allow good and marketable title to be conveyed to each buyer of Equipment. T&M is authorized to assist in securing arrangements with lessors or creditors having a lien or security interest in the Equipment to pay a portion of the net proceeds, up to the amount that the Trustee agrees is due and owing to such lessors or secured creditors, if necessary, to obtain a release of the liens on the Certificates of Title. All titles shall be accompanied by any other documents which are necessary in order to transfer marketable title, free and clear of all liens, security interests, and claims of any third parties, to each buyer of the Equipment. In the event any certificate of title has not been properly executed and endorsed, then the Trustee does hereby appoint the president or any vice-president of T&M as its attorney in fact for purposes of executing and endorsing each such certificate of title in order to transfer good and marketable title to the buyer.

C. *Representations and Warranties.*

i) As the seller of Equipment, the Trustee represents and warrants to T&M that: (a) on the date of sale, Equipment will be owned by the Debtor's estate and that good and marketable title to such Equipment will be conveyed to each buyer; (b) to the knowledge of the Trustee, the description of the Equipment shall be accurately set forth on Schedule A, including the year, make, model and VIN number; and (c) its signatories are duly authorized to enter into this Agreement and to complete and deliver all Schedules that are delivered to T&M, subject to approval of the Bankruptcy Court.

ii) The Trustee further represents and warrants that, to the knowledge of the Trustee, (a) the Equipment is free of the presence of any hazardous substance; (b) none of the Equipment has never been rebuilt, salvaged or glidered except as disclosed to T&M; and, (c) the Equipment emission control devices and systems have not been altered or removed.

6. *Payment/Accounting:* T&M shall be responsible for the collection of the auction proceeds (including applicable sales tax) tendered by the highest bidder in connection with the sale of each item of Equipment. T&M shall remit the Net Auction Proceeds received in connection with the sale, together with an accounting of the sale of the Equipment to the Trustee within 10 banking days after the Auction Date. For purposes of this paragraph, the term "Net Auction Proceeds" represents the gross auction proceeds which are received from the sale of all of the Equipment (excluding sales tax, and buyer premiums) less Commissions, Preparation Costs, Necessary Repairs, Transportation Costs, Emergency Repairs, Third Party Storage Costs, vehicle inspection fees and any other out-of-pocket costs incurred by T&M which are the responsibility of the Debtor's estate in connection with this Agreement or payable pursuant to paragraph 10, below. The Net Auction Proceeds shall be further reduced by any mandatory creditor or lease payoffs, which T&M has agreed, in writing, to remit directly to the Debtor's secured creditors or lessors in connection with any given item of Equipment. In the event there are insufficient funds remaining to fully satisfy any creditor or lessor payoff, then the Trustee shall remit the shortfall at the time T&M remits the Net Auction Proceeds. The parties further agree that T&M shall be deemed to be the assignee and substituted party for any lease or debt obligation which is paid on behalf of the Debtor's estate.

7. *Storage/Transportation/Emergency Repairs:*T&M agrees to retain a contract carrier for the purpose of transport and delivery within the United States of specific items of equipment listed on Schedule A to the Equipment Location; however, T&M shall not be liable for casualty loss or other loss which occurs to the Equipment in connection with its transportation and delivery which are not due to the active negligence of T&M. Risk of loss shall remain with the Debtor's estate following delivery for casualty loss to the Equipment including, but not limited to, loss due to acts of God, fire, and inclement weather, together with any other loss of any nature which are not attributable to negligent acts or omissions of T&M. The contract carrier shall be responsible for all driver-related liability in connection with the transport of the Equipment to the Equipment Location. Trustee representatives shall be allowed at the Equipment Location at any time during business hours to inspect and monitor the Equipment.

All costs of transportation and fuel incurred by T&M in connection with the transportation and delivery of any Equipment to, from or around the Equipment Location ("Transportation Costs") shall be remitted to T&M pursuant to Paragraph 6, above. In addition, T&M is authorized to render any emergency repairs which are incurred in connection with any mechanical failure of $1000.00 or less which occurs in connection with the transport of any vehicle ("Emergency Repairs"), which shall also be remitted to T&M pursuant to paragraph 5, above.

In the event any Equipment that is delivered to the Equipment Location is not sold at auction for any reason, the Equipment may continue to be stored at the Equipment Location for a period not to exceed the lesser of ten days or the date in which T&M is required to vacate the premises. In such event, all risks of any loss or damage to the Equipment shall remain with the Debtor's estate and the Trustee shall be responsible for proper security and/or further monitoring of the Equipment at all times thereafter. Upon the expiration of the foregoing period, the Trustee shall cause any unsold Equipment to be removed from the Equipment Location or otherwise abandoned; however, T&M agrees to provide personnel to transport within the United States and store the Equipment at an agreed upon storage location, the cost of which shall be deducted from the gross proceeds of the auction pursuant to paragraph 5, above or reimbursed subsequently in the event full remittance has been made as of the date such costs are incurred ("Third Party Storage Costs").

8. *TERMS OF THE AUCTION SALE:* EACH PARTY UNDERSTANDS AND AGREES THAT EACH AND EVERY ITEM OF EQUIPMENT OFFERED FOR SALE AND SOLD AT AUCTION WILL BE WITHOUT RESERVE, "AS IS", "WHERE IS", "WITH ALL FAULTS", WITHOUT ANY PRICE GUARANTEE, AND WITHOUT WARRANTY, EXPRESSED OR IMPLIED, OF ANY KIND, NATURE OR DESCRIPTION, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY OF MERCHANTABILITY, CONDITION OR FITNESS FOR A PARTICULAR PURPOSE EXCEPT THAT THE TRUSTEE WARRANTS, AS OF THE AUCTION DATE PER BANKRUPTCY COURT ORDER, GOOD AND MARKETABLE LEGAL TITLE, FREE AND CLEAR OF ALL LIENS AND ENCUMBRANCES, FOR EACH ITEM OF EQUIPMENT. IN NO EVENT SHALL T&M BE LIABLE FOR ANY LOSS OF PROFITS OR SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING IN ANY MANNER IN CONNECTION WITH THIS AGREEMENT.

9. *Representations or Non-Performance:* The Trustee agrees that any material breach of performance of this Agreement or material misrepresentation or omission concerning the Equipment including, but not limited to, the year, make, model, mileage, condition, modifications, history and/or any material component may be actionable by the buyer ("Buyer") of such Equipment. In the event T&M determines that a material breach, material misrepresentation or omission of material fact has occurred, T&M is authorized, but not obligated, to make commercially reasonable accommodations with the Buyer to resolve the claim including, but not necessarily limited to, a full or partial refund of the purchase price and out-of-pocket expenses of the Buyer or termination of the transaction ("Accommodations"). Any such Accommodations shall not reduce the commissions and costs as defined herein that are owed by the Debtor's estate. T&M shall retain a possessory and secured lien on the Equipment until T&M is paid in full for all commissions and out of pocket expenses that are the responsibility of the Trustee under this Agreement.

10. *Withdrawal of Equipment from Sale.* In the event any one or more items of Equipment are withdrawn from Schedule A through no fault of T&M after the Equipment has been advertised for sale by T&M, then the Trustee shall pay T&M a 10% commission based upon the low-side estimated value of the withdrawn Equipment. In addition, the Trustee shall reimburse T&M for all Preparation Costs, Necessary Repairs, Transportation Costs, Emergency Repairs, Third Party Storage Costs, Court Intervention Costs, vehicle inspection fees and any other out-of-pocket expenses incurred by T&M which are the responsibility of the Trustee in connection with this Agreement. The foregoing commission(s) together with all of the foregoing costs shall be deducted by T&M from the gross proceeds owing in connection with the sale of all remaining Schedule A items and any deficiency shall be remitted directly to T&M. T&M shall retain a possessory and secured lien in the withdrawn Equipment until T&M is paid in full.

The Trustee or T&M may withdraw any Equipment from a sale that T&M suspects or determines, in consultation with the Trustee, is not sale ready, however, in such event, the Debtor's estate shall remain liable for all out-of-pocket costs that are the responsibility of the Trustee under this Agreement.

11. *Insurance:* The Trustee shall sufficiently self-insure or obtain and keep in force a sufficient policy of liability and property damage insurance, together with comprehensive coverage in an amount not less than the fair market value of the Equipment subject to this Agreement which insures against potential losses arising out of the use, possession, control, ownership or sale of the Equipment subject to this Agreement or otherwise in connection with the Trustee's responsibilities under the terms of this Agreement, including coverage for theft, acts of God, fire, inclement weather and vandalism of the Equipment. T&M shall obtain and keep in force during the term or throughout the performance of this Agreement a sufficient garage liability policy which insures against liability arising out of any acts, omissions, or other responsibilities of T&M in connection with this Agreement. Upon request, each party shall provide the other party with a copy of all applicable certificates evidencing the existence of such insurance. The Trustee further agrees to indemnify and hold T&M harmless from and against any and all theft, vandalism and casualty loss to the Equipment including, but not limited to, loss due to acts of God, fire, and weather as well as any other losses of any nature which are not attributable to the negligent acts or omissions of T&M.

12. *Waiver of Subrogation:* The Trustee and T&M each hereby mutually release and relieve the other from all claims and liabilities arising from or caused by any hazard or loss covered by insurance in connection with the performance of this Agreement, regardless of the cause of the damage or loss; provided that this release shall apply only to the extent that such loss is covered by insurance.

13. *Prohibition of Creditor/Consignor Bids:* The Trustee, and its representatives, lessors and secured creditors may attend the auction event, but agree not to submit bids, directly, indirectly, or through any third party, for any item of Equipment.

3

14. *Bankruptcy Court Approval:* As noted, this Agreement is subject to approval by the Bankruptcy Court without requirements of bond in connection with the Bankruptcy Case and approved retention to the Bankruptcy Court of T&M as auctioneer to Debtor.

15. *Negation of Partnership:* Nothing contained in this Agreement is intended to create any partnership, joint venture, or association between the parties hereto or in any way makes either party a co-principal with the other party with reference to the property or the agreements referenced herein and any inferences to the contrary are hereby expressly negated.

16. *Force Majeure:* T&M shall not be liable for any delay, interruption or termination of any auction event beyond the reasonable control of T&M including, but not limited to, any pandemic, epidemic or spread of disease; act of God; act of war, terrorism or cyberattack; riots; floods; fire; unusually severe weather conditions; or act or order of any public or governmental authority. In the event of any force majeure event the Trustee shall remain liable for the out-of-pocket costs of T&M that are the responsibility of the Trustee under this Agreement.

17. *Restrictions on Use of Equipment.* From the time the Trustee provides Equipment specifications to T&M until the Equipment is sold, the Trustee shall not materially alter or modify the Equipment or remove any components from the Equipment except as disclosed in advance of sale.

18. *Indemnification:* The Trustee will indemnify, defend, and hold harmless T&M, its subsidiaries and affiliates and their respective successors and assigns, and each of their officers, directors, shareholders, employees and agents, against any and all claims, demands, suits, actions, causes of action, damages, costs or charges whatsoever (including out-of-pocket costs and expenses, including the reasonable attorneys' fees) arising from or related to: (a) any breach of or inaccuracy in any representation or warranty made in this Agreement; (b) any breach or nonfulfillment of any covenant, obligation or other agreement of the Trustee contained in this Agreement; (c) hazardous materials associated with the Equipment or contamination resulting from any leakage, spills, or malfunction of the Equipment; (d) any deficiency in compliance with any applicable environmental law, rules or regulations; and (e) any Accommodations made to Buyer pursuant to paragraph 9.

19. *Miscellaneous:* (a) This Agreement sets forth the entire understanding and agreement between the parties hereto and merges and supersedes all prior discussions and agreements, and may not be amended except by further mutual written agreement. (b) No party shall be bound by any warranty or representation other than as expressly set forth in this Agreement. (c) The waiver of any right arising from a breach of any term or condition of this Agreement shall not be deemed a waiver of any right arising from any future breach of the same or any other term or condition. (d) This Agreement and any claim, controversy or dispute arising out of or related to this Agreement, any of the transactions contemplated hereby, the relationship of the parties, and/or the interpretation and enforcement of the rights and duties of the parties, whether arising in contract, tort, equity or otherwise, shall be construed in accordance with and governed by the laws of the State of Delaware and any disputes arising in connection with this Agreement shall be subject to the exclusive jurisdiction and venue of the state and federal courts of Delaware. No action, suit or proceeding with respect to this Agreement may be brought in any other forum. (e) This Agreement shall inure to and be binding upon the successors and assigns of the parties hereto. (f) This Agreement is effective as of the date identified on Page 1. (g) "Facsimile signatures" and "Electronic signatures", as the terms are commonly used with reference to facsimile machines and computers used in transmitting documents, signatures, photocopies, etc., will be and hereby are declared by all parties to this agreement to be the same as an original signature to this agreement. A facsimile or electronic duplicate of this agreement, including the signature portion thereof, will be treated and relied upon by all parties hereto as an original agreement and an authentic signature with the same legal effect as though the facsimile or electronic transmission was an original document to which a genuine signature has been affixed.

The parties have duly executed this Auction Agreement as of the date and year first above written.

| | |
|---|---|
| TAYLOR & MARTIN, LLC AUCTIONEERS | Alfred T. Giuliano, Chapter 7 Trustee of YEP Commerce, Inc. dba GENEX |
| By *[signature]* | By *[signature]* |
| (Signature) | (Signature) |
| BENJAMIN J. REYNOLDS | Alfred T. Giuliano |
| (Print Name) | (Print Name) |
| AUCTIONEER for Taylor & Martin, LLC Auctioneers | Chapter 7 Trustee |
| (Title) | (Title) |

Taylor & Martin, LLC Auctioneers
1865 N Airport Road • Fremont, NE 68025
PO Box 349 • Fremont, NE 68026-0349
402-721-4500 (p)
402-727-6183 (f)



## SCHEDULE A TO AUCTION AGREEMENT

BETWEEN
ALFRED T. GIULIANO
AND
TAYLOR & MARTIN, LLC AUCTIONEERS

| Year | Make | Model | Serial Number |
|------|------|-------|---------------|
|      |      |       |               |

This Schedule A, when signed by the Trustee and approved by the bankruptcy court, shall be deemed to be written authorization from the Trustee to Auctioneer to sell the specific item(s) of Equipment listed in this Schedule A in accordance with the terms, provisions, and conditions of the Auction Agreement between the Trustee and Auctioneer. All Equipment must be delivered to the Equipment Location no later than 5 days prior to the Auction Date in order to be listed for online bidding.

Alfred T. Giuliano, Chapter 7 Trustee of YEP Commerce, Inc. dba
GENEX

By: _____
Title: _____ Chapter 7 Trustee
Dated: 9/6/24

TAYLOR & MARTIN, LLC AUCTIONEERS

By: _____
Title: Auctioneer for Taylor & Martin, LLC Auctioneers
Dated: 9/4/24

EQUIPMENT LOCATION: _____

AUCTION DATE: _____

ON-LINE BROADCASTING LOCATION:

_____ T&M Headquarters, Fremont, Nebraska
_____ South Sioux City, Nebraska Auction Location
_____ Salisbury, North Carolina Auction Location